IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **D&D TRANSPORTATION,** : | **No. 1:07-CV-00960** |
| **Plaintiff** : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| **FREIGHTLINER, L.L.C.,** : | |
| **DETROIT DIESEL CORP.,** : | |
| **ARVIN MERITOR, INC, and** : | |
| **BENDIX COMMERCIAL** : | |
| **VEHICLE SYSTEMS, L.L.C.,** : | |
| **Defendants** : | |

# M E M O R A N D U M

This case arises out of a dispute about the performance of nine commercial vehicles leased by Plaintiff. Because of the history of maintenance required for each vehicle, Plaintiff brings suit for breach of express and implied warranty against the Defendant manufacturers of either the vehicles or certain component parts thereof. The claim for breach of implied warranty is addressed on these motions for partial summary judgment. Defendants maintain that they successfully disclaimed the implied warranties on their products or, in the alternative, that the mileage on the tractors demonstrates that they were merchantable and fit for their particular purpose. Plaintiff contends that 1) it did not receive an express warranty or a limitation of implied warranty from certain Defendants; 2) Defendants did not properly disclaim the implied warranties; and 3) the mileage on the tractors is not conclusive evidence that the tractors were merchantable or fit for their intended purpose. For the reasons that follow, the motions will be granted in part and denied in part.

**I.      Background**

   **A.      Facts**

The following facts are undisputed, except where noted. In 2003 and 2004, Plaintiff leased[1] from a non-party nine commercial tractors for tractor-trailer trucks. The vehicles were manufactured by Defendant Freightliner, LLC ("Freightliner"). All vehicles contained certain component parts manufactured by Defendant Arvin Meritor Transmission ("Arvin Meritor"). The five vehicles leased in 2003 contained engines manufactured by Detroit Diesel Corporation ("Detroit Diesel").[2]

All Defendants submit that their products were accompanied by an express warranty which contained a disclaimer of all implied warranties. Freightliner provided documentary evidence that someone authorized to act for Plaintiff signed a "Customer Warranty Acknowledgment" ("CWA") for each vehicle. The CWA acknowledges receipt of the Freightliner "Owner's Warranty Information Book" and accepts Freightliner's limited warranty, warranty disclaimer, and limitation of liability. (Doc. 25-3.) Freightliner's limited warranty is contained

---

[1] Leases and sales are analogous contracts and Pennsylvania courts have held the provisions of the UCC regarding implied warranties within documents of sale applicable to documents of lease when the nature of the lease is akin to a sale. *Keblish v. Thomas Equip. Ltd.*, 660 A.2d 38, 26 (Pa. 1995); *Hornenberger v. General Motors Corp.*, 929 F. Supp. 884, 887 (E.D. Pa. 1996). The parties apply the law of sales to these leases without discussion of a distinction between the two, thus the court will follow suit.

[2] Plaintiff alleges that the vehicles also contained parts manufactured by Defendant Bendix Commercial Vehicle Systems, LLC ("Bendix"). Plaintiff cannot substantiate the allegation. Evidence linking the defendant to the product which allegedly has failed is a necessary element of a plaintiff's case for breach of warranty. *See Santarelli v. BP America*, 913 F. Supp. 324, 329 (M.D. Pa. 1996); *see also* Stephen M. Feldman, Pennsylvania Trial Guide: Product Liability § 5.1 (2000). Plaintiff has submitted the affidavit of its owner and operator David Henninger. Henninger avers that, "[t]o the best of [his] knowledge and belief, the air compressor component on the subject vehicles was manufactured by Bendix Vehicle Systems." (Henninger Aff. ¶ 5, Sept. 26, 2007.) This belief, without proof, is not evidence sufficient to withstand summary judgment. *See Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). Bendix's motion for partial summary judgment will thus be granted without further discussion.

within a document that consists of thirteen pages of substance. (Doc. 25-4.) The first five pages contain the "**Freightliner New Vehicle Warranty**" which sets forth the tractor components warranted and the time for which the warranty will be in effect. Pages six and seven contain the "**New Vehicle Limited Warranty**." All text describing the limited warranty is the same size. Some text is printed with plain formatting, some text is in bold. Among the bold sections is the following, set off in its own paragraph: "**The foregoing limited warranty is exclusive and in lieu of all other warranties whether written, oral or implied including, but not limited to any warranty of merchantability or fitness for purpose.**" (*Id.*) This excerpt follows a bolded section at the end of the previous paragraph, and precedes another sentence-long paragraph in bold type.

Detroit Diesel submits that it provided a one-page Limited Warranty for its engines. The page heading declares, in approximately eighteen- and sixteen-point font, "**Limited Warranty on New Detroit Diesel Series 60 Engines Used in On-Highway Vehicle Applications**." (Doc. 25-5.) The left-hand column of the page details the terms of coverage for the warranty provided by Detroit Diesel under the heading in bold and fourteen-point font, "**Terms of Coverage**." The right-hand column, under the heading in bold and fourteen-point font, "**This Warranty Does Not Cover**," describes the incidents of use not covered by Detroit Diesel's express warranty. Approximately mid-column, the heading "**Other Limitations**" appears in bold, fourteen-point font. Under this heading, in text written in all capital letters, is the disclaimer of limited warranty at issue. The disclaimer is in its own paragraph. It is in approximately twelve-point font and is not in bold. It states:

> THIS LIMITED WARRANTY AND THE EMISSIONS CONTROL WARRANTY ARE THE ONLY WARRANTIES APPLICABLE TO THE ENGINE AND ACCESSORIES AS USED IN ON-HIGHWAY VEHICLE APPLICATIONS.  DETROIT DIESEL CORPORATION MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED,

> INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  DETROIT DIESEL CORPORATION SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES AS DESCRIBED ABOVE.

(*Id.*)

Plaintiff avers that it did not receive a warranty from Detroit Diesel and was never made aware of any limitation on any implied warranty for Detroit Diesel parts. (Henninger Aff. ¶¶ 1, 4, Sept. 26, 2007.)

Arvin Meritor claims that the component parts it contributed to the vehicles came with an express warranty which contained a disclaimer of all implied warranties.  The company made slight changes in its warranty manual from 2003 to 2004.  The following description applies to both manuals, except where noted.  The manual is twelve pages long.  The first page contains a paragraph reminding the end user that understanding warranty coverage is "essential to protecting your investment."  (Docs. 21-5, 21-6.)  The table of contents notes a "terms and conditions" section, but does not highlight that a warranty limitation is contained therein.  The entire manual is twelve pages, nine of which provide substantive warranty information.  Pages four through ten set forth the warranties offered on various Arvin Meritor products.  Pages eleven and twelve, comprising the "**Terms and Conditions**" section, limit the warranties.

The 2003 manual has all warranty limitation information on one page, in a two-column format.  The text is in approximately ten-point font.  About two-thirds down the right-hand column, at point number six on the page, is the "<u>Disclaimer of Warranty</u>."  The phrase is not in bold or larger than surrounding text.  Immediately below, the disclaimer of implied warranty appears in italicized capital letters, the only text in the paragraph.  It states:

> *THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES OR CONDITIONS, EXPRESSED, IMPLIED OR STATUTORY INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.*

(Doc. 21-5.) It is the only section of text on the page that is in italicized capital letters.

In 2004, Arvin Meritor changed the layout of its **Terms and Conditions** section from one page to two pages. Both pages are written with a dual-column format. Page one of the section provides "**Coverage Exclusions**" and "**Coverage Limitations**." The disclaimer of implied warranty appears in the right-hand column on page two. All text on page two is in, approximately, ten-point font. At point number six is the "Disclaimer of Warranty." The phrase is not in bold or larger than surrounding text. Immediately below, the disclaimer of implied warranty appears in italicized capital letters, the only text in section six. It states:

> *THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES OR CONDITIONS, EXPRESSED, IMPLIED OR STATUTORY INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.*

(Doc. 21-6.) Again, the above is the only section of text on the page that is in italicized capital letters.

Plaintiff avers that it never received a warranty from Arvin Meritor and was never made aware of any limitations on any implied warranty for Arvin Meritor parts. (Henninger Aff. ¶¶ 2, 4.)

### B.   Procedural History

On May 24, 2007, nine cases, each addressing one vehicle, were transferred from the Eastern District of Pennsylvania to the Middle District of Pennsylvania. The cases were consolidated on July 17, 2007. After a case management conference and an agreement by the parties, this court ordered that disposition of one issue in this case, whether the defendants sufficiently disclaimed

the implied warranty of merchantability or fitness for a particular purpose, should precede the remaining issues.  Accordingly, Defendants filed motions for summary judgment on that question, with supporting briefs.  Plaintiff opposed each motion, and Defendants filed reply briefs.  Soon after the motions were fully ripe, Arvin Meritor filed a suggestion of bankruptcy as to David Henninger, doing business as D&D Transportation.  The court ordered the parties to show cause why all activity in this action should not be stayed for the pendency of the bankruptcy proceeding.  Upon consideration of the parties' submissions, the court stayed all activity in this matter, pending receipt of a document authorizing the continued prosecution of this suit from the bankruptcy court.

On January 24, 2008, D&D Transportation filed an order from the bankruptcy court lifting the automatic stay for purposes of the captioned matter.  On January 30, 2008, this court lifted its own stay on activity in this matter.  The parties, pursuant to court order, filed the appropriate statement or counterstatement of undisputed material facts.  Accordingly, the court turns to the partial motions for summary judgment filed by Defendants, now ripe for disposition.

**II.**     **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a

reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.    Discussion**

Under the Pennsylvania enactment of the Uniform Commercial Code, upon sale of goods by merchant, there is implied "a warranty that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind." 13 Pa. Cons. Stat. Ann. § 2314. "Merchantable" goods are, among other things, "fit for the ordinary purposes for which such goods are used." § 2314(b)(3). There

7

may also exist an implied warranty for a particular purpose, "[w]hen the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." § 2315.

An implied warranty may be modified or excluded § 2316.  Section 2316(b) states: "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."  Each contested disclaimer here mentions "merchantability" and "fitness for a particular purpose," although the latter is not required.  Accordingly, the question for the court is whether the disclaimers are "conspicuous."  *See* § 1201 (conspicuousness is a question of law for the court).  It is axiomatic from the statute that the party against whom a disclaimer of the implied warranty is to operate must be aware of the disclaimer.[3] *See Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1223 (3d Cir. 1970), *abrogated on other grounds by AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 584 A.2d 915, 925-26 (Pa. 1990).

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals . . . is conspicuous.  Language in the body of a form is conspicuous if it is in larger or other contrasting type or color."  13 Pa. Cons. Stat. Ann. § 1201.  Additional factors to consider in determining conspicuousness are

---

[3] The only Defendant shown to have provided Plaintiff with a disclaimer of its implied warranty is Freightliner.  The court must accept Plaintiff's averment that it did not receive disclaimers from Arvin Meritor and Detroit Diesel.  A factfinder will be required to determine whether Plaintiff actually received the disclaimers.  Because the question of the conspicuous nature of a disclaimer is a matter of law, the court will examine the disclaimers provided by each Defendant on the issue.

the disclaimer's placement in the document, the size of the disclaimer's print, and whether the disclaimer is set apart from other text. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 259 (Pa. Super. Ct. 1997); *Metalized Ceramics for Elecs., Inc. v. Nat'l Ammonia Co.*, 663 A.2d 762, 765 (Pa. Super. Ct. 1995).

### A. Freightliner

Freightliner's disclaimer is conspicuous. Upon lease of each of the nine subject vehicles, Freightliner required someone acting on Plaintiff's behalf to sign an acknowledgment that Plaintiff received and accepted Freightliner's disclaimer of implied warranty. If nothing else, this acknowledgment put Plaintiff on notice that a warranty disclaimer existed and should be investigated. Further, Freightliner adequately disclaimed the limited warranty in the warranty manual provided. The manual first described the express warranty Freightliner provided. Immediately following is Freightliner's "**New Vehicle Limited Warranty**," in which Freightliner set forth the aspects of use that it did not guarantee. The disclaimer of implied warranty exists on the first of seven pages describing the way in which the warranty was limited. The text of the disclaimer is the same size as surrounding text, but it is in bold format. Much of the text on the same page is not in bold. The disclaimer is in its own separate paragraph. The court concludes that a reasonable person ought to have noticed this disclaimer. Accordingly, Freightliner will be granted summary judgment on this issue.

### B. Detroit Diesel

The disclaimer of implied warranty by Detroit Diesel is conspicuous. The entire warranty is a one-page document, clearly demarcating what it covers and what it does not cover. Under the column headed "**This Warranty Does Not Cover**" and in a section marked "**Other Limitations**," Detroit Diesel disclaimed the implied warranties of merchantability and fitness for a particular purpose in

capital letters. The disclaimer has its own paragraph within the "**Other Limitations**" section. Although the font size of the disclaimer is not appreciably larger than the surrounding text, the court cannot but conclude that a reasonable person ought to have noticed it. Detroit Diesel will be granted summary judgment solely on the issue of whether its disclaimer is conspicuous.

### C. Arvin Meritor

The disclaimer of implied warranty by Arvin Meritor in its manuals for 2003 and 2004 are conspicuous. It is contained within the larger section of "**Terms and Conditions**," which section is identified in the table of contents for the manual. The disclaimer itself is the only text in a section headed with "Disclaimer of Warranty." It is the only text on the page that is in all capital letters and italicized. The font size is not appreciably different than the size of the surrounding text, but the court must conclude that a reasonable person ought to have noticed the disclaimer. Arvin Meritor will be granted summary judgment solely on the issue of the conspicuousness of its disclaimer.

### IV. Conclusion

Summary judgment will be granted, at least in part, for all Defendants. Bendix will be granted summary judgment because Plaintiff failed to come forward with any evidence that Bendix manufactured a component part of any of the nine subject vehicles. Freightliner will be granted summary judgment because there is no genuine issue of material fact that Plaintiff received its disclaimer of implied warranty and that the disclaimer was conspicuous. Detroit Diesel and Arvin Meritor will be denied partial summary judgment because a genuine issue of

material fact exists as to the threshold question of whether Plaintiff received their respective disclaimers. If a factfinder determines that Plaintiff did receive the documents that Detroit Diesel and Arvin Meritor purport to be their disclaimers, the court concludes as a matter of law that the disclaimers were conspicuous.[4]

                                                                                                s/Sylvia H. Rambo
                                                                                                SYLVIA H. RAMBO
                                                                                                United States District Judge

Dated: April 2, 2008.

---

[4] The court declines to address the alternative issue of whether, by virtue of having traveled hundreds of thousands of miles, the subject tractors may be deemed merchantable and fit for their particular purpose as a matter of law. The court understands Plaintiff's contention to be that the continual need for repair was the problematic element of performance. Only by virtue of performing those repairs constantly were the vehicles able to be in service at all. These arguments require additional factual development.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **D&D TRANSPORTATION,** : | No. 1:07-CV-00960 |
| **Plaintiff** : | **JUDGE SYLVIA H. RAMBO** |
| v. : | |
| **FREIGHTLINER, L.L.C., DETROIT DIESEL CORP., ARVIN MERITOR, INC, and BENDIX COMMERCIAL VEHICLE SYSTEMS, L.L.C.,** : | |
| **Defendants** : | |

## O R D E R

For the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) The motion for partial summary judgment filed by Defendant Bendix (Doc. 23) is **GRANTED**.

2) The motion for partial summary judgment filed by Defendants Freightliner and Detroit Diesel (Doc. 25) is **GRANTED** in part and **DENIED** in part.

    a) The motion is **GRANTED** as to Freightliner because 1) Plaintiff received the disclaimer of implied warranty from Freightliner and 2) the disclaimer was conspicuous.

    b) The motion is **DENIED** as to Detroit Diesel because a fact question remains as to the threshold issue of whether Plaintiff received the disclaimer of implied warranty by Detroit Diesel.  The motion is **GRANTED** in part because, if it is proved that Plaintiff received the documentation containing the disclaimer, the disclaimer was conspicuous on paper.

      3) The motion for partial summary judgment filed by Defendant Arvin Meritor (Doc. 21) is **DENIED** in part and **GRANTED** in part.  The motion is **DENIED** in part because a fact question remains as to the threshold issue of whether Plaintiff received the disclaimer of implied warranty by Arvin Meritor.  The motion is **GRANTED** in part because, if it is proved that Plaintiff received the documentation containing the disclaimer, the disclaimer was conspicuous on paper.

                                                                     s/Sylvia H. Rambo  
                                                                     SYLVIA H. RAMBO  
                                                                   United States District Judge

Dated:  April 2, 2008.